The opinion of the court was delivered by
Spencer, J.
In the year 1872, John J. O’Brien was a large dealer in provisions in the city of New Orleans, and kept a deposit account with the Hibernia Bank. In the latter part of September of that year, by connivance of the paying teller, he overdrew Ms account by some $29,000.
The bank discovered this overdraft about the first of October, and at once demanded payment or security, O’Brien on that day executed in its favor an act of pledge of 337. casks of bacon.
In the next few days, and before O’Brien’s failure (which occurred on the eleventh of October), 164 casks of this meat had been sold by brokers under the supervision and direction of O’Brien, and the proceeds of sale collected by the bank, and applied to said indebtedness, reducing the same to about $4717 14. The bank also held a note of one Digges, indorsed or guaranteed by O’Brien, for $2525 05. As stated, O’Brien went to protest October eleventh, owing about $100,000. Among his largest creditors was plaintiff, Geo. W. Byrne.
On that day, October 11, the plaintiff, Byrne, and O’Brien called at the bank for the purpose of redeeming the property remaining in pledge In its hands. The bank furnished them a statement of O’Brien’s indebtedness on that day, which, added to the Digges note, amounted to $7242 19. Byrne, at once paid the bank that sum, and took from it an order, or transfer, for the bacon remaining — 173 casks — which he received and had sold for his own account and benefit, realizing for it several thousand dollars more than he had paid to the bank.
On twenty-ninth August, 1873, about eleven months after this transaction, Byrne brought suit against the bank to recover the amount he had paid, in this settlement, for the Digges note; alleging that it had been paid in error — in this wise: That he had entered into an agreement with O’Brien in October, 1872 (of which said bank was cognizant, and to which it became party), “wherebyfor certain considerations petitioner bound himself to pay said bank the amount due by said O’Brien as a depositor at that date for sums overdrawn from said bank.” That the bank, knowing said Digges note was not embraced within the terms of his said obligation, fraudulently added its amount to the sum he had so agreed to pay it for O’Brien’s account, and was therefore bound to refund the amount so overpaid, etc. That suit, No. 5347 of the docket of this court, was some time since decided finally against Byrne.
On sixteenth September, 1873, about eighteen days after instituting *83 -the aboye suit, Byrne brought the suit now before us against O’Brien And the bank. He claims judgment against O’Brien for $30,662, balance due, as per statement and account annexed to the petition. In this •statement O’Brien is charged, with this sum of $7212 19 paid the bank ■as hereinbefore stated.
It is charged in substance that the bank imposed upon and deirauded O’Brien, by inducing him to believe that he owed it a large sum, when in truth he owed it nothing. That it adroitly “ saddled upon him” :its claims against other recreant debtors, and thus procured and induced him to execute and sign, in error, the said act of pledge of October 1, '.1872. That having thus fraudulently possessed itself of O’Brien’s prop•erty, it rushed it upon the market and thereby sacrificed it, thus making itself liable to pay all of O’Brien’s debts. The petition then igoes on to say, hypothetically, that even if O’Brien did owe the bank, the contract of pledge was illegal and fraudulent, because it conferred :& preference and had the effect of injuring the other creditors — the said O’Brien being at the time insolvent to the knowledge of the bank. It concludes with a prayer for judgment against O’Brien for $30,662 Also for judgment against the bank for same sum ; that the contract of pledge be annulled, and the bank be condemned to restore all the property received thereunder, and in default to pay plaintiff’s claim, etc.
There is nowhere in plaintiff’s petition any direct or specific charge (that O’Brien made the contract with intent or purpose to injure or ■defraud his creditors. On the contrary, the allegation is that he was •deceived and imposed upon, and made the contract in error and not in Jraucl. It is not easy to reconcile these allegations with the requirements of the Code on the subject of the revocatory action. It is of the essence of that action, that the debtor intended a wrong. True, this wrongful intent is presumed to exist, wherever it is shown that an insolvent has made a contract prejudicial to his creditors; but that pre•sumption of fraudulent intent is not so absolute that a party can not negative it by a direct admission to the contrary.
The plaintiff seems to have realized that these allegations were not supportive of, or in harmony with, the revocatory action ; for he discontinued “ all allegations and causes of action set up, except the revocatory action, and elected to prosecute said cause alone under the allegations tending to maintain such revocatory action.” But this discontinuance did not strip these averments of their character and forcé as judicial .admissions, which bind the party making them, unless alleged and •shown to have been made in error, which is not pretended here.
But there are other and graver difficulties which oppose themselves -.to plaintiff’s action.
When O’Brien went to protest on eleventh October, 1872, there *84 seems to have commenced a general “ grab game ” among his creditors,, in which plaintiff, Byrne, played no insignificant part. Lawler got about $8000 worth of meat; Yose about forty-four casks, and Byrne all that was left, some seventy casks. Byrne did more. He entered into an agreement with O’Brien, as we have seen, in order to get hold of the 173: casks in the bank’s hands. By this agreement, he bound himself to pay up the deposit account and overdrafts of O’Brien in the bank, for which O’Brien had given the pledge of said bacon. In pursuance of this obligation he went with O’Brien to the bank, adjusted the account and paid it,, taking a transfer from the bank for the 173 casks of bacon. Having paid this debt to the bank, for which he had bound himself with and for O’Brien, by said agreement, he was legally subrogated to the bank’s-rights (C. 0. 2157, No. 3), besides holding its express order or transfer for the bacon.
Having thus obtained possession of the pledge, he enforced it by selling the property and appropriating the proceeds to his own use— realizing several thousand dollars more than he had paid out.
After having thus, subsequent to O’Brien’s failure, bound himself for “ certain considerations” to pay the amount due the bank under its-pledge, after having gone to the bank, and adjusted and paid O’Brien’ssaid debt according to his agreement, and obtained from the bank its pledge ; after having thus acquired the bank’s rights against O’Brien,, and enforced them, to his own great profit and advantage, with what show of reason can Byrne now come, without even an offer of restitution, and demand the nullity of this contract, and claim from the bank not only the money paid it under his own agreement with O’Brien, but all else that O’Brien owes him — unless the bank surrenders to him 337' casks of bacon, more than half of which Byrne himself got possession of and sold ? One occupying the position of Byrne in these transactions-must go outside of a court of justice to enforce such demands. There-is no allegation or pretense that he did not do these things with his eyes, open, and after O’Brien’s failure was “ known of all men.”
There-was no bill of exceptions taken to the introduction of the-record of the said suit No. 5347 in evidence. If there had been, we see no reason to doubt that it was admissible under the general issue. Under that plea the defendant had a right to show the falsity of plaintiff’s allegations — that no obligation had ever existed on its part to-plaintiff; that no right of action ever arose. The matters of defense-which must be specially pleaded are those which are set up in avoidance or extinguishment of an obligation admitted or proved to have-once existed. Gleises vs. Faurie, 6 L. 457 ; 9 L. 111; 5 R. 486.
The general rule is that special defenses waive the general issue. In other words, they admit the facts alleged, but set up another state of facts in avoidance.
*85 But when a defendant contests the existence of the facts alleged by plaintiff, the general issue is the proper plea; and under it he may prove ¡any fact or circumstance which tends to show the non-existence or falsity of the fact alleged by plaintiff. Thus, in the case before us, the plaintiff ■seeks to recover of the bank, among other items, the said sum of $7242 19. The bank introduces the record 5847 to prove that so far from -the bank • ever having owed him that sum, that the plaintiff had judicially admitted that he owed it to the bank, and that he had actually paid it, so that there never was in existence for one moment any obligation or. any state óf facts creative of obligation against the bank.
We hold, therefore, that Byrne having, after O’Brien’s failure, and in ■order to secure advantage to himself, made himself party to the contract between the bank and O’Brien by agreeing to pay, and by paying the money due thereunder, thereby obtaining the bank’s rights and posses■sion of its pledge, selling the said pledge and appropriating its proceeds can not now be heard to say that said contract was fraudulent and illegal.
This case impresses us very much as that of Dwight vs. Bemiss, 16 L. 149, did our predecessors. It seems to us that the plaintiff “was endeavoring to secure some thing from the wreck, and to obtain that preference for himself, which he complains of so much in others.”
The judgment below gave plaintiff judgment against O’Brien, but rejected his demands against the bank. We think the judgment correct, .and it is affirmed with costs.